## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:21CR00657 BAH** |
| | ) | |
| **CODY MATTICE** | ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The defendant, by and through counsel, respectfully submits this memorandum in aid of sentencing. He respectfully requests that he be sentenced in such a way as to ensure his expedited return to his young family.  He states the following as support for his request.

### PROCEDURAL BACKGROUND

1. On April 22, 2022, Mattice pled guilty to 18 USC §111(a)(1),  a lesser-included offense in Count Four of the Indictment.  The offense carries a maximum sentence of eight years imprisonment, a fine of $250,000 or twice the pecuniary gain or loss of the offense, and a term of supervised release of not more than three years. Mattice is also obligated to pay $2000 in restitution, a $100 special assessment, and any fine (if financially able) imposed by the Court.

2. Pursuant to Mattice's Plea Agreement, the parties agreed that his Offense Level is 21 (Zone D), that his estimated Criminal History Category is I, and that

the resulting guidelines range is 37 to 46 months incarceration.  See, Dkt. # 43 at

5C.  The parties got it right, as this is consistent with the Pre-Sentence Report

(hereinafter PSR) calculation.  PSR at ¶ 104.

## NO MATERIAL ERRORS IN PSR

3. There are no material errors in the Presentence Report (PSR).

4.  The PSR notes that " [T]he Court may consider the defendant's

responsibilities to his minor children as a mitigating factor for a variance."  PSR at

¶ 134.

## GUIDELINES ARE NOT MADATORY

5. As it knows, the Court has broad discretion to consider every aspect of a

particular case, and a particular defendant, in fashioning an appropriate sentence.

*United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38

(2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Although the Court must

first calculate the appropriate sentencing range under the Guidelines, it is not

bound by the Guidelines or Guidelines Policy Statements. It may make its own

policy judgments, even if different from those in the Guidelines. *Kimbrough*, 552

U.S. at 101. The Court must impose a sentence consistent with the terms of 18

U.S.C. § 3553(a) and § 3661.

## SENTENCING FACTORS

6. The core requirement of 18 U.S.C. §3553(a) is that the court impose *"a sentence sufficient, but not greater than necessary"* to comply with the purposes of sentencing set forth in § 3553(a), which provides no order of priority among the factors. The factors outlined in § 3553(a) are as follows:

• The nature and circumstances of the of the offense and the history and characteristics of the defendant 18 U.S.C. § 3553(a)(1);

• the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A);

• the need for the sentence imposed "to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B);

• the need for the sentence imposed "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2) (C);

• the need for the sentence imposed "to *provide the defendant with needed* educational or vocational training, *medical care*, or other correctional treatment in the most effective manner," 18 U.S.C. § 3552(a)(2)(D);

• the kinds of available sentences available, 18 U.S.C. § 3553(a)(3);

• the guidelines in effect at the date of sentencing and any pertinent policy statements, 18 U.S.C. § 3553(a)(4) and (5);

• "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6);

• "the need to provide restitution to any victims of the offenses," 18 U.S.C. § 3553(a)(7).

## A VARIANCE IS WARRANTED

**The Offense**

7. On January 6, 2021, Cody Mattice briefly deviated from his "Walton Family" existence. Apolitical by nature, for that one day he became immersed in a mob of angry people. For that moment, he let his moral compass falter and followed the crowd. Mattice pled guilty early on, recognizing the mistakes he has made, and he understands the consequences that must follow. He makes no excuses, though he does want the government and this Court to recognize that initially, he simply came to hear the former President speak. He came prepared to defend against aggression from perceived members of Antifa - an obvious miscalculation resulting from his isolation from real-world events in his rural bubble.

8. He is not proud of what he did that day. He is not violent by nature and has been described by those that know him well as a "teddy bear." See, Ex. 1 (letters from family & friends). He is not proud of having pulled down a barricade and body

4

surfed to the arch way of the Capital. Cody Mattice was pulled into the energy and anger of the crowd – it is not an excuse; it is simply what happened. His actions were out of character. A kind and compassionate man by nature, spraying a capitol police officer with pepper spray is simply not the man that lives in rural Upstate New York on his Grandfather's land – those were the actions of a simple man overwhelmed by the events of January 6, 2021.

**Mr. Mattice's Personal Background**

9. Cody is the oldest of his Mom's four children.  According to his mother Andrea, his father was a violent, drug addicted man who was physically, emotionally, and financially absent from her children's lives.  The father died after injecting a fatal dose of pills in 2020.

10. Cody Mattice grew up to be the father he wished he had had as a child. "Protector and guardian of the family;" "selfless person who puts others before him;" "kind and compassionate;" "sweet humble generous man;" are a sampling of the phrases used to describe Cody Mattice by those close to him.  *See*, Ex. 1. He is literally the opposite of the father that ushered him into this world.

11. Cody Mattice is a stay-at-home Dad, caring for his children and those of relatives in rural upstate New York on the farmland occupied and owned by his aging Grandfather.  He lives a simple existence, cutting wood in the warm months to heat his and his Grandfather's home in the winter.  He maintains the land and cares for

his young family while the mother of his children works at the University of Rochester Hospital. Though a skilled mechanic, being the primary caregiver was both emotionally and financially the most appropriate role for him to assume. A "teddy bear" of a man who wears his heart on his sleeve, he teaches his children everything he knows about being a good person, nature, and self-respect. He is an enormous presence in the company of family. His behavior on January 6 is beyond aberrant, it was a surprise to all that are near and dear to him.

12. The fundamental task in sentencing is for this Court to weigh "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The nature and circumstances of the offense have already been discussed, so has Mr. Mattice's history and characteristics. As discussed above, he is a good man. He is a devoted family man, a compassionate father, and a man who is stiving to create a healthy and safe environment for his children. There is no need to protect the public from further crimes by him, nor is there any need to rehabilitate him. Certainly, the fact he sits in a cell at USP Lewisburg serves as a deterrent to others who contemplate engaging in conduct like that which occurred on January 6. Cody Mattice has a lived simple and honest life. His personal history and characteristics call for a lenient sentence.

**Mr. Mattice's Acceptance of Responsibility**

13. Cody Mattice has accepted responsibility for his conduct on January 6. He has agreed as part of the plea to pay $2,000 restitution to the Architect of the Capitol, even though he did not commit any property damage nor was he accused of conspiring with anyone else to do so.

14. Mattice is unequivocal about his responsibility for his actions on January 6 and expresses genuine remorse for them. *See*, Ex. 2. Uneducated and rural, he was a prime target for misinformation. Yet rather than shirking responsibility or go on about how miserable 24/7 Covid lockdown in jail has been,  he writes about his children and how much they need him.[1]

**Comparable January 6 defendants**

15. As of June 21, 2022, two defendants have been sentenced after having pled guilty to a single count of 18 U.S.C § 111(a)(1).

<u>*U.S. v. Leffingwell 21cr0005 ABJ*</u>

16. Defendant Leffingwell pled guilty to one count of 18 U.S.C. § 111(a)(1) and was sentenced to Six (6) months incarceration, followed by Twenty-Four (24) months of supervised release, a $100.00 Special Assessment, and Restitution in the amount of $2,000.00. On January 6, Leffingwell pressed forward onto the

---

[1] Mr. Mattice would request that your Honor credit him for the covid lockdown time by granting him a variance.  It is only fair, no other pre-trial detainees (pre-pandemic) have experienced such isolating conditions of confinement.

restricted Capitol grounds and up onto the Upper West Terrace, making his way to the Senate Wing entrance. A small, combined force of United States Capitol and Metropolitan Police Officers had formed a line to rebuff additional rioters from gaining entrance to the Senate Wing of the Capitol. Leffingwell was positioned directly in front of the regrouped line of officers. As he stood at the front of the crowd of rioters behind him, Leffingwell chanted not only "stop the steal!" but also "shame!" and "join us!" directed at the police officers standing in front of him. Appearing to respond to the pleas of the line of officers, some of the crowd began to call back to the rioters behind them to "back up!" Rather than back up, Leffingwell called out for the rioters to stand their ground, shouting "If you back up, you'll never get back in!" At that point, the line of officers began pressing on the crowd, including Leffingwell, to back them out of the threshold of the Senate Wing doors. Leffingwell had a choice: either comply with the direction of the officers or fight back. He chose the latter. He first *punched* Officer D.A. in the head, and then as he continued to swing, he *punched* Officer W.H. in the head, before eventually *punching* Officer D.A. once more.  Certainly, Leffingwell's conduct was much more egregious than Cody Mattice's. To sentence Mattice differently would create an unwarranted disparity.

*U.S. v. Creek 21cr0645 DLF*

17. Defendant Creek pled guilty to one count of 18 U.S.C. § 111(a)(1) and was sentenced to twenty-seven (27) months of incarceration, twelve (12) months of supervised release, $100 special assessment, and $2,000.00 restitution. On January 6, Creek packed a backpack with supplies including a first aid kit, *mace, a boot knife*, and binoculars. Creek and his three associates all had radios in case the "phones went down." Just before 2:30 p.m., Creek and the mob pushed up against the bike-rack barrier backed by a thin line of police officers. The barrier had been reconstituted by police after the first breach of the West Front that occurred over an hour earlier. The mob, including Creek, pushed through the reconstituted barrier, breaking the line of bike-rack fencing and the police officers behind it. Creek ran through the front of the crowd, grabbing a Metropolitan Police Department (MPD) Officer (hereinafter referred to as "Officer J.C.M.") and driving him backward forcefully several feet through the West Plaza. After letting go of Officer J.C.M., Creek hit him in the face shield of his helmet. Creek then made a beeline for a U.S. Capitol Police (USCP) officer (hereinafter referred to as "Officer R.S.E.") who was attempting to protect himself behind a bike rack barrier and a police shield. Creek went around the bike rack barrier, gave Officer R.S.E. a hard shove in the shoulders, hit and then kicked him, causing Officer R.S.E. to fall backward to the ground. Officer R.S.E. tried to get up when another rioter pushed

him back down to the ground. After backing away from Officer R.S.E., Creek

picked up what looks like a ratchet strap—a thick strap with heavy metal

buckles—from the ground and threw it in the direction of officers.  Creek was

armed with a boot knife and mace. An ex-marine, he behaved dangerously.  He

was armed with a weapon capable of causing lethal injuries.  Again, to sentence

Mattice the same as or more harshly than Creek would create an unwarranted

disparity.

### Conclusion

18.  Mr. Mattice submits that a variance is warranted in his case.  He is a

man of good character, he is kind and compassionate, and he has a young family

that is suffering dearly because of his absence.  He moves this Honorable Court to

impose a *"sentence sufficient, but not greater than necessary"* to comply with the

purposes of sentencing set forth in 18 U.S.C. § 3553(a).


Respectfully submitted,


_____/s/_____
Christopher M. Davis #385582
Counsel for Daryl Johnson
Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this motion was served on the United States via the Court's CM/ECF System on this 2nd day of July 2022.

_____/s/_____
Christopher M. Davis