**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00657 (BAH)** |
| **v.** | : | |
| | : | |
| **CODY MATTICE and** | : | |
| **JAMES PHILLIP MAULT,** | : | |
| | : | |
| **Defendants.** | : | |

<u>**GOVERNMENT'S RESPONSE TO DEFENDANTS' SENTENCING MEMORANDA**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the defendants' Memoranda in Aid of Sentencing, ECF Nos. 62 and 63.  Because a high-end Guidelines sentence remains a reasonable and appropriate reflection of each defendant's unlawful conduct, criminal history, and personal characteristics, the government reiterates its request that the Court sentence both Mault and Mattice to 44 months of incarceration, three years of supervised release, $2,000 in restitution, and the mandatory $100 special assessment.

**<u>Introduction</u>**

Both defendants request a downward variance from the applicable Sentencing Guidelines range of 37 to 46 months of imprisonment.  Mault "seek[s] a variance below the bottom of the guideline sentence because of the stress from his harsh terms of confinement, the defendant's multiple military terms[,] and his resultant PTSD."  ECF No. 63 at 1.  Other than noting that he "has had great remorse for the event of the day" and "never intended to have conflict with the police and did not expect to walk to the Capitol," *id.* at 5, Mault does not address his own culpability for his conduct on January 6, 2021.  Mattice, somewhat differently, seeks leniency "to

1

ensure his expedited return to his young family," ECF No. 62 at 1, contending that he "was pulled into the energy and anger of the crowd," *id.* at 5, and his conduct represented a brief and "beyond aberrant" deviation from his "'Walton Family' existence." *Id.* at 4-6.  Neither defendant spares a word for Officer M.A., whom they sprayed with chemical agent in order to incapacitate him, the other officers who were relentlessly assaulted by the defendants and their fellow rioters, or those inside the Capitol Building who fled or hid in fear during the hours-long attack.

But Mault's and Mattice's conduct on January 6, 2021 was not the result of post-traumatic stress or a sudden fit of passion; both acted intentionally and violently – over the course of more than four hours – and the damage they and the other rioters caused cannot so easily be disregarded. Dressed and prepared for battle, they pulled down a section of bike rack separating officers from the horde of rioters, led the breach of a police line, scampered over the shoulders of other rioters to reach the tunnel of the Lower West Terrace, and deployed chemical spray as a dangerous weapon against police officers who were defending the Capitol Building and its occupants from the violent mob.  As described more fully in the Government's Sentencing Memoranda, ECF No. 60 & 61, a 44-month sentence—near the top of the Guidelines range—is necessary and appropriate to reflect the gravity of their conduct, credit their acceptance of responsibility, and further the goals of general and specific deterrence for the defendants and those who might be inspired by their crimes.

### **"Caught Up In the Crowd"**

Like many who attacked our Capitol and, indeed, our democracy on January 6, 2021, Mattice suggests that he is not entirely responsible for his crimes because he was caught up in the "energy and anger of the crowd."  ECF No. 62 at 5.  Mault, too, claims that "he never intended to

2

have conflict with the police and did not expect to walk to the Capitol."  ECF No. 63 at 5; *see also* ECF No. 63-2 at 3 ("Mr. Mault did not intentionally harm anyone.  I believe he was caught up in the moment, in the feeling of the crowd at the US Capitol, but he truly did not intend to harm anyone").  Both arguments are factually incorrect and largely irrelevant to the defendants' culpability.

By their own admission, each was an active participant in the mob that interrupted the certification of the 2020 Electoral College vote count, injured more than one hundred law enforcement officers, and resulted in more than 2.7 million dollars in losses.  Neither was swept up in the crowd; instead, Mault and Mattice were agitators.  Mattice's pre-riot text message conversations with Mault reveal that they anticipated and prepared for violence on January 6.[1]  *See* ECF No. 44 at ¶ 8.  As he marched to the Capitol, Mattice planned to "fuck some shit up."  *Id.* at ¶¶ 11, 12.  Mault encouraged police officers to stand aside and allow the rioters to invade the Capitol Building.  ECF No. 48 at ¶ 13.  When the vastly outnumbered officers refused to give way, Mattice pulled down a section of bike rack fencing separating the officers from the crowd.  ECF No. 44 at ¶ 16.  Then Mattice and Mault led the mob that penetrated the police line in the West Plaza, forcing officers to retreat to the Lower West Terrace.  *Id.* at ¶¶ 16-17.  Both defendants sprayed chemicals at Officer M.A.  *Id.* at ¶ 20; *see also* ECF No. 48 at ¶ 19.

The defendants were not overcome by an afternoon-long adrenaline rush.  Nearly four hours after Mattice told his fiancée that he would "march on Capitol hill," *id.* at ¶10, Mault and

---

[1] That Mault and Mattice allegedly intended to battle "aggression from perceived members of Antifa," ECF No. 62 at 4; *see also* ECF No. 63 at 5, rather than the MPD and USCP officers they eventually assaulted, does not (even if true) make their planning and subsequent crimes any less blameworthy.

3

Mattice scampered over the shoulders of their fellow rioters to reach the mouth of the Lower West Terrace tunnel; each then used chemical spray against police officers who would not yield to the mob. *Id.* at ¶¶ 18-19.  As described in the Government's Sentencing Memorandum, ECF No. 61 at 12-17, the defendants had time to reflect on their conduct as Mattice recovered from the effects of chemical spray.  They could have disengaged.  Instead, they rejoined the fight, traveling to the Lower West Terrace tunnel.  *Id.* at 16-17.

Mault's and Mattice's conduct, documented by photo and video footage and eventually admitted in their Statements of Offense, is not that of individuals who were "lost in the moment." ECF No. 62-2 at 5.  They planned and executed their scheme.  Each has agency, and responsibility, for his actions.  As demonstrated by their text messages and videotaped comments, they knew what they were doing on January 6.  Indeed, Mattice bragged about their leadership role to friends and family members even as he and Mault continued their assault on the Capitol.

In any case, being "caught up in the moment" during a violent riot is not valid mitigation, and certainly does not call for the Court's leniency.  As this Court observed when sentencing misdemeanor defendant Blake Reed earlier this year, "being a crowd follower or an uncritical believer in news and conspiracy theories—regardless of how incredible—does not absolve a defendant for engaging in criminal activity[.]" *United States v. Reed*, No. 1:21-cr-204(3) (BAH) (Apr. 14, 2022), Tr. at 86.  Indeed, the very nature of a mob is that the members are "caught up" – feeding off of—and feeding—the energy of other members.  Just as Mattice felt that "the energy from a crowd that large along with everything said that day made it feel almost impossible to not get sucked in," ECF No. 62-2 at 5, so too did the others who overwhelmed the officers, engaged in prolonged and violent battles with the police throughout the afternoon, interrupted the

certification of the Electoral College, and caused over $2.7 million in losses.  None of them should be absolved simply because they were inspired by the former President's speech or the spirit of their comrades.

Mattice may well have fed off of the crowd's riotous energy, but he and Mault contributed to it as well.  And their conduct—particularly in attempting to incapacitate the officers who were defending the Capitol Building while being viciously assaulted—helped other rioters carry on the assault and commit their own crimes.  Neither deserves credit for being swept up in a mob.

**Expressions of Surprise**

Mattice and his supporters urge the Court to be lenient, as his behavior on January 6, 2021 allegedly was "beyond aberrant [and] a surprise to all that are near and dear to him."  ECF No. 62 at 6.  Mault and his supporters seek mercy because of his military service.  ECF No. 63 at 1.  That Mault's and Mattice's crimes were a departure from an otherwise law-abiding life likely is true.  Indeed, as Mault was committing his crimes on January 6, 2021, he was recorded yelling at the officers that he would soon overrun, "I obey the fucking law every goddamn fucking day.  Every fucking day.  Where the fuck's it get me?  Everyone else (inaudible) breaks the law and they get away with (inaudible)."  The defendants' lack of prior convictions obviously should be considered by the Court, and is fully accounted for in their low criminal history category.

But the Court should not be misled by Mattice's supporters' expressions of surprise.  His mother purports to have been "shocked … upon hearing the charges" that Mattice faced.  ECF No. 62-1 at 1.  She expresses her "disbelief" that Mattice was charged with assaulting law enforcement officers, and that such conduct was "out of character."  *Id.* at 2, 5.  Her surprise was less acute on January 6 itself, when, as the government noted in its Sentencing Memorandum, ECF No. 60 at

22-23, Mattice and his mother texted about his participation in the riot.  Mattice bragged about his

conduct—including "tussling with the cops"—and his mother celebrated it.  In fact, she exclaimed,

"I'm not surprised you went right in!"  The next day, comforting Mattice at the prospect that he

would be arrested, Mattice's mother stated, "you didn't do anything wrong."

Mattice's fiancée, too, contends that "these charges have hit unexpectedly and as a great

surprise."  ECF No. 62-1 at 7.  But on January 6, 2021, as noted, she expressed little but her support

and admiration of Mattice's criminal conduct.  ECF No. 60 at 17.  Indeed, between his conduct in

the West Plaza and his conduct in the Lower West Terrace, Mattice told her that he "fought off

like 4 or 5 cops and we stand fucking victorious."  Mattice's fiancée's response: "Okay good babe

im glad you made history."[2]

### Comparison to *Leffingwell* and *Creek*

Mattice urges the Court to abandon the Sentencing Guidelines and instead sentence him to

a shorter term of imprisonment consistent with the sentences imposed on defendants Mark

Jefferson Leffingwell and Kevin Douglas Creek.  ECF No. 62 at 7-10.  Mault joins that analysis.

ECF No. 63 at 7.  Neither case is an appropriate comparator.

Both Leffingwell and Creek pleaded guilty to one count of 18 U.S.C. § 111(a)(1) in

connection with their assaults on police officers during the January 6, 2021 riot at the U.S. Capitol.

*See United States v. Leffingwell*, No. 1:21-cr-5 (ABJ), ECF No. 51; *United States v. Creek*, No.

---

[2] Mattice's sister also submitted a letter on Mattice's behalf.  ECF No. 62 at 21.  On January 6, 2021, from 3:50 to 3:51 p.m., Mattice received three texts from a person identified as "Shae" [likely that sister] which read, "Did you get in the capital," "Get videos," and "Go on Ashley's Facebook and go on Facebook Live recording everything so we can all see it."  Ashley likely refers to Mattice's fiancée.  This exchange further corroborates that Mattice's family members were aware of, and cheered, his decision to join the riot and assault law enforcement officers.

1:21-cr-645 (DLF), ECF No. 34.  They each faced an advisory Guideline range of 24-30 months, rather than the 37-46 month range applicable to Mault and Mattice.  *Leffingwell,* ECF No. 53 at 24; *Creek*, ECF No. 61 at 64.  That is because, unlike Mault and Mattice, neither used a dangerous weapon during their assaults.  *Id.*  In both cases, the government recommended a mid-range sentence of 27 months' imprisonment.  *Id.*  Judge Amy Berman Jackson sentenced Leffingwell to six months' incarceration followed by 24 months of supervised release, *see Leffingwell*, ECF No. 59, while Judge Dabney Friedrich sentenced Creek to 27 months' imprisonment, *see Creek*, ECF No. 34.

Mault's and Mattice's situation does not call for a sentence like that of Leffingwell and Creek.  Most importantly, the Guidelines range calculated by Probation here—and agreed to by Mault and Mattice—includes a four-point enhancement for the use of a dangerous weapon, chemical spray, pursuant to U.S.S.G. § 2A2.2(b)(2), that was not applied to either Leffingwell or Creek.  The Sentencing Guidelines treat Mault's and Mattice's use of a dangerous weapon as more aggravated than the punches that Leffingwell threw at Officers D.A. and W.H. while he participated in the second breach of the Senate Wing Door.  They also treat the defendants' use of chemical spray against Officer M.A. more seriously than Creek's conduct of grabbing and hitting an officer in his face shield and shoving, hitting, and kicking another officer.  Accordingly, the Sentencing Commission plainly disagrees that "Leffingwell's conduct was much more egregious than Cody Mattice's."  ECF No. 62 at 8.

The Leffingwell sentencing transcript, *Leffingwell*, ECF No. 53, further illustrates that his situation is not similar to that of Mault and Mattice such that a high-end Guidelines sentence here would create an unwarranted disparity.  Leffingwell did not commit his crimes amidst the chaos

of the West Plaza or the Lower West Terrace tunnel, *id.* at 27-28, and the Court found that he expressed sincere remorse, *id.* at 40. Judge Berman Jackson determined that most of the evidence of Leffingwell's conduct on January 6, 2021 was that he "just stood there." *Id.* at 42-43. She found that he was "completely candid" with the FBI, *id.* at 44—quite unlike Mattice. Judge Berman Jackson also considered Leffingwell's status as a disabled veteran, *id.* at 49, his personal struggles, *id.*, and the possibility that significant imprisonment would cause him to lose his veteran's benefits, *id.* at 54. It also is quite unique that Leffingwell immediate expressed remorse, seeking out his victims and apologizing to them on the very day he committed his crime. Leffingwell is an outlier, and to impose such a lenient sentence here would be disparate with the more apt cases described in the Government's Sentencing Memoranda, ECF Nos. 60 at 33-35 & ECF No. 61 at 33-35.

Creek, too, was charged with, and convicted of, physical assaults on law enforcement officers, consisting of grabbing and punching one USCP officer and shoving and kicking another. *Creek*, ECF No. 61 at 58-60. Like Mault and Mattice, Creek was part of the mob that overran law enforcement officers on the West Plaza. *Id.* at 26-27. But he was not alleged to have traveled to the Lower West Terrace to assault officers there. Despite Mattice's claim, ECF No. 62 at 10, Judge Friedrich found that Creek did *not* assault officers with a weapon causing lethal injuries, and thus the U.S.S.G. §2A2.2(b)(2) enhancement was *not* applied. *Creek*, ECF No. 61 at 60. Accordingly, Judge Friedrich adopted the government's recommendation and imposed a within-Guidelines sentence of 27 months' imprisonment. *Id.* at 66.

Neither *Creek* nor *Leffingwell* stand for the proposition that the defendants here should be sentenced below the Guidelines range or that their admitted use of a dangerous weapon to

incapacitate Officer M.A. should be ignored. The government thus renews its request for the Court to impose a within-Guidelines sentence that is necessary and appropriate for each defendant.

**Conclusion**

For the reasons set forth in the Government's Sentencing Memoranda and above, the government recommends that the Court impose on each defendant a sentence of imprisonment of 44 months, which is a high-end Guidelines sentence as calculated by the Probation Office and agreed upon by the parties in the plea agreement, plus three years of supervised release, restitution of $2,000, and the mandatory $100 special assessment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Jordan A. Konig*
       JORDAN A. KONIG
       Supervisory Trial Attorney,
       U.S. Department of Justice
       Detailed to the U.S. Attorney's Office
       For the District of Columbia
       P.O. Box 55, Washington, D.C. 20044
       202-305-7917 (v) / 202-514-5238 (f)
       Jordan.A.Konig@usdoj.gov

       */s/ Michael J. Romano*
       MICHAEL J. ROMANO
       IL Bar No. 6293658
       Trial Attorney, Detailee
       601 D Street, N.W.
       Washington, D.C. 20530
       Telephone No. (202) 262-7850
       michael.romano@usdoj.gov